**O**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY BAKER,                     ) | CASE NO. ED CV 09-01078 RZ |
|                                  ) | |
|              Plaintiff,          ) | |
|                                  ) | MEMORANDUM OPINION |
|      vs.                         ) | AND ORDER |
|                                  ) | |
| MICHAEL J. ASTRUE, Commissioner  ) | |
| of Social Security Administration,) | |
|                                  ) | |
|              Defendant.          ) | |

The Administrative Law Judge found that Plaintiff had several physical impairments, but that those did not disable him. The Administrative Law Judge also found that Plaintiff did not have a severe mental impairment, and that Plaintiff's testimony as to his mental impairment was not credible. In this Court, it is here that Plaintiff assigns error.

The regulations do not define a "severe" impairment. Instead, they state what a *non*-severe impairment is: one that does not significantly limit physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521. The basic work activities are "the abilities and aptitudes necessary to do most jobs," including various physical and mental activities. *Id.* The requirement of having a severe impairment performs a gatekeeping function, screening out frivolous complaints. *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987). In its internal procedures, the Social Security Administration assesses an impairment as "non-severe" if it has no more than a minimal effect on the individual's ability to do basic

work functions. SSR 85-28. This minimalist treatment has received the Courts' imprimatur. *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). Thus, the requirement that a claimant have a severe impairment has been transmogrified into a requirement that the claimant have an impairment that is not very severe at all – it simply must have more than a minimal effect on his or her ability to do basic work functions. When the Commissioner rests his decision on the failure to satisfy the severity requirement, that decision, as with any other, must rest on substantial evidence within the record. *Smolen v. Chater, supra,* 80 F.3d at 1289-90.

The Administrative Law Judge here found that Plaintiff could perform the basic work activities because he could barbecue, take out the trash, take a shower and attend to his personal needs, visit with a friend once per week and visit with his sister and brother, watch television for an extended period of time, and drive. [AR 60] In the face of a diagnosis of depression [AR 372] with treatment over a period of several months, including numerous adjustments of medications [AR 352-73], low ratings on the General Assessment of Functioning Scale [AR 369, 372] and reported feelings of depression for a period of years prior to the diagnosis [AR 363], it is hard to justify the Administrative Law Judge's finding. The Administrative Law Judge did not apply the standard that there must be more than a minimal impact on basic work activities to justify a severity finding, as the Ninth Circuit requires; rather, he applied a standard that *if* an applicant *could* perform minimal activities, he did not have a severe impairment. This was error.

In this Court, the Commissioner seeks to justify the decision a variety of ways. The Commissioner argues that the Administrative Law Judge properly found that Plaintiff had a non-severe impairment because he only received conservative treatment, consisting of medication management, and was not hospitalized for any episodes of decompensation. (Defendant's Memorandum in Support of Answer 4:7-14.) Much treatment of mental disorders involves medication management, and it is unpersuasive to call this "conservative treatment," and state that therefore a claimant does not have a severe impairment. Where

mental activity is involved, administering medications that can alter behavior shows anything but conservative treatment.

The Commissioner also argues that the Commissioner properly did not consider the GAF from Dr. Payne, and an earlier GAF from an intake employee. The Commissioner argues that the GAF rating may result from abilities in domains other than work, such as the social arena. Perhaps this is true, and so it may be accurate to state that complete reliance should not be placed on the ratings. Nevertheless, they are evidence with some relevance; the GAF of 55 by Dr. Payne [AR 372] places Plaintiff in the category of "Moderate symptoms . . . OR moderate difficulty in social, occupational, or school functioning . . . ." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, FOURTH EDITION (DSM IV) at 32. The diagnosis a month or two earlier of a GAF of 37 [AR 369] placed Plaintiff in the category of "Some impairment in reality testing or communication . . . OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood . . . ." *Id*. It is not important at this point that the GAF might not be conclusive on these issues; at such an early stage, where the purpose of the severity requirement is to screen out those claims that rely only on *de minimis* impairments, the GAF ratings should not be overlooked entirely.

There is some question raised as to whether the GAF of 37 should be ignored because it was rendered by a person who is not a qualified medical source within the meaning of the regulations. That is not so clear, however. The report of which the GAF is a part states the need to refer the Plaintiff to "CWIC," and, two days later, Plaintiff in fact was evaluated at the Crisis Walk in Center. [AR 371] It is not clear to the Court, from the present record, that the Crisis Walk in Center is different from, rather than associated with, the Department of Behavioral Health where the GAF of 37 was assigned. If the centers are affiliated or associated, then it may be that the GAF assessment can be seen as part of the overall evaluation; this would be a factor to consider in light of *Benton v. Barnhart*, 331 F.3d 1030, 1041 (9th Cir. 2003). Furthermore, the diagnosis appears to have been made not by the intake person but by a supervisor; while the abbreviation following

the supervisor's name is difficult to read, it may indicate "LCSW." [AR 368, 369] A social worker is not a medical source that *has* to be considered for determination of whether an impairment exists, *see* 20 C.F.R. § 416.913(a), but certainly one whose view it is appropriate to consider once an impairment has been found, *see* 20 C.F.R. § 416.913(e). Given the other reports which match up with the diagnosis of depression, the report here, together with its diagnosis and GAF, was evidence that bore on the question of severity.

The Commissioner also argues that Plaintiff was doing better after some treatment, and the Administrative Law Judge did state that Plaintiff's depression appeared to be stabilized with his medications. [AR 62] Yet the records show frequent adjustments to medications [AR 355-64], and that Plaintiff continued having sleeping problems and anhedonia even months after starting psychiatric therapy [AR 356]. It is true, as the Administrative Law Judge found, that Plaintiff did not require hospitalization for any decompensation or exacerbation of his mental symptoms [AR 62], but avoidance of hospitalization does not equate to stabilization, and stabilization does not equate to a lack of severity of a mental impairment.

The Administrative Law Judge also noted that Plaintiff had been "seen at Victor Valley Counseling, but by his own admission going to the clinic because he was referred by the Social Security Administration (Exhibit 12F/3 [sic: 12F/13])." [AR 62] The implication is that somehow the extent of Plaintiff's impairment is less, or Plaintiff is less believable, because he was referred for therapy by the Social Security Administration. The Court views it otherwise, that the Social Security Administration was doing its job by sending Plaintiff for therapy. This is, in fact, what the record reflects; as the exhibit states, "Pt says Social Security referred him due to him telling them he had problems — depression." [AR 363]

In short, substantial evidence does not support the Administrative Law Judge's determination that Plaintiff's diagnosed mental impairment of depression was a non-severe impairment. The decision is reversed, and the matter will be remanded for further

proceedings; the Commissioner shall take as established that Plaintiff has a severe mental impairment, and proceed with the sequential evaluation.

IT IS SO ORDERED.

DATED: February 24, 2010

_____
RALPH ZAREFSKY
UNITED STATES MAGISTRATE JUDGE

- 5 -